UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRITTANY O'KONSKI,

          Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

_____

**DECISION AND ORDER**
19-CV-6274S

      1.      Plaintiff Brittany O'Konski brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits under Title II of the Act. (Docket No. 1.) The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed her application with the Social Security Administration on October 16, 2014. Plaintiff alleged disability beginning at birth, due to stroke in utero, right side partial paralysis, right arm and hand limited use, right leg limited use, anxiety, cognitive problems, attention deficit hyperactivity disorder, thyroid problems, restless leg syndrome, and speech problems. (R.[1] at 22, 413.) Plaintiff's application was denied, and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). After an initial hearing, Plaintiff's application was denied, but on appeal the Appeals Council remanded it. (R. at 106.) Upon remand, ALJ Elizabeth Koennecke held a hearing on December 18, 2017, at which Plaintiff, represented by her attorney, appeared and testified. (R. at 106-122.) Vocational Expert Sheila Justice also appeared

_____

[1] Citations to the underlying administrative record are designated as "R."

and testified by telephone. At the time of the hearing, Plaintiff was 28 years old, with a twelfth-grade education and prior work experience as a cashier, kitchen help, and summer counselor. (R. at 409, 414.)

3.      The ALJ considered the case *de novo* and, on January 9, 2018, issued a written decision denying Plaintiff's application for benefits. (R. at 18-37.) On February 26, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on April 11, 2019, challenging the Commissioner's final decision.[2]

4.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 10, 14.)   Plaintiff filed a response on December 13, 2019, (Docket No. 15), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

5.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where

---

[2] The ALJ's January 9, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8.      The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not,

the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9.      Although the claimant has the burden of proof on the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S.

at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided

into two parts.  First, the Commissioner must assess the claimant's job qualifications by

considering his or her physical ability, age, education, and work experience.  Second, the

Commissioner must determine whether jobs exist in the national economy that a person

having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20

C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954,

76 L. Ed. 2d 66 (1983).

10.      The ALJ analyzed Plaintiff's claim for benefits under the process set forth

above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful

activity since January 1, 2011. (R. at 22.)  At step two, the ALJ found that Plaintiff has the

severe impairments of carpal tunnel syndrome in her left hand, general right-side weakness due to hemiparesis in utero, and a mental impairment, variously characterized. Id. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 24.)

11.     Next, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform light work, except that Plaintiff can

> occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she should never climb ladders, ropes, or scaffolds; she is able to rarely reach with the right upper extremity; she has no limitations for reaching with the left (dominant) upper extremity; [she] should avoid exposure to workplace hazards; she retains the ability to understand and follow semi-skilled instructions and directions, perform semi-skilled tasks independently, maintain attention and concentration for semi-skilled tasks, regularly attend to a routine and maintain a schedule, relate to and interact appropriately with all others to the extent necessary to carry out semi-skilled tasks, handle work-related stress in that [she] can make occasional decisions directly related to the performance of semi-skilled tasks involving goal-oriented work rather than work involving a production rate pace.

(R. at 25-26.)

12.     At step four, the ALJ found that Plaintiff has no past relevant work. (R. at 35.)  At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 36.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 37.)

13.     Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because (1) the ALJ's RFC determination failed to account for Plaintiff's limited use of her right hand, (2) the ALJ's RFC assessment does not reflect

Plaintiff's standing or left-hand limitations, and (3) the ALJ did not sustain her burden of showing that substantial jobs exist in the national economy that Plaintiff could perform. (Docket No. 10-1 at 10, 20, 22, 24.) For the following reasons, Plaintiff's motion will be granted, and Defendant's motion will be denied.

14.     Plaintiff first argues that the ALJ erred because her RFC determination fails to include limitations to right hand fingering and handling. Defendant argues that the ALJ's decision not to include right hand limitations is supported by the record. Defendant's argument fails.

15.     The ALJ is required to consider "every medical opinion" received. 20 C.F.R. § 404.1527(c). A treating physician's opinion is entitled to controlling weight in cases where that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d). When a treating physician's opinion is not consistent with the rest of the record, it does not sustain controlling weight. See Domm v. Colvin, 579 F. App'x 27, 28 (2d Cir. 2014); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam).

16.     If the ALJ decides that the opinion is not entitled to controlling weight, she must determine how much weight, if any, to give it. In doing so, she must "explicitly consider" such factors as: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Estrella v. Berryhill, 925 F.3d 90, 95–96 (2d Cir. 2019) (citing Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam); 20 C.F.R. § 404.1527(c)(2). At both steps, the ALJ must "give good reasons … for the weight [she gives the] treating source's [medical]

opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam); 20 C.F.R. §

404.1527(d)(2); see also Schaal v. Apfel, 134 F.3d 496, 503–504 (2d Cir. 1998). A failure

to explicitly consider every factor does not necessarily require remand, but the reviewing

Court must be able to determine that the ALJ considered these factors. Estrella, 925 F.3d

at 96 ("failure to explicitly apply the [regulatory] factors when assigning weight ... is a

procedural error" but does not require remand if "a searching review of the record assures

[the court] that the substance of the treating physician rule was not traversed").

17.     Here, Plaintiff experienced a stroke in utero that resulted in right side

hemiparesis.[3] (R. at 650, 1114.) As a child she was able to hold objects but did not have

fine motor control in her right hand. (R. at 614.) As an adult, she had limited use of her

right hand, with one doctor noting "right sided weakness with spasticity which interferes

with mobility and activities of daily living." (R. at 1114.)

18.     The extent of her right hand and arm function is not entirely clear from the

record. After Botox injections, she "was able to comb using [her] right arm."  (R. at 1125.)

She worked part-time as a cashier at Home Depot, mostly at the self-check cashier. (R.

at 110-113.) She testified that she used her hands about 1/5 of the time during her job,

but claimed that she was unable to use her right hand. (R. at 109-10.) She further testified

that she had to leave early at times because her left hand, the "only hand [she] can use,"

would start hurting and she could not squeeze the handgun. (R. at 110.)

19.     Dr. Laura Giganti treated Plaintiff regularly for hand issues, including right-

side spasticity and muscle tightness. She saw Plaintiff on April 29, May 20, July 28, July

---

[3] Hemiparesis is "weakness or the inability to move on one side of the body, making it hard to perform everyday activities like eating or dressing." https://www.stroke.org/en/about-stroke/effects-of-stroke/physical-effects-of-stroke/physical-impact/hemiparesis. Accessed 1/29/20 at 8:06 AM.

30, August 4, September 9, and December 4, 2015, and on March 4, 2016. (R. at 1113,1119, 1127, 1131, 1134, 1143, 1148, 1155-56.) On April 29, 2015, Dr. Giganti noted that Plaintiff had right upper extremity muscle atrophy. (R. at 1113.) Plaintiff's muscle tone was right pectoralis 2/4, biceps 2/4, triceps 1/4, wrist flexors 1/4, wrist extensors 0/4, finger flexors 0/4, and thumb adductors 0/4. (Id.) On May 20, 2015, Dr. Giganti again noted Plaintiff's right upper extremity muscle atrophy, and noted the same hand strength. (R. at 1119.) On March 4, 2016, Plaintiff's muscle tone was the same as at previous visits. (R. at 1155.)

20.    On September 28, 2015, Dr. Giganti filled out a form on Plaintiff's physical abilities and limitations. (R. at 939.) She opined that Plaintiff could never perform fine manipulations with her right hand, and could only occasionally do gross manipulation with her right hand, or raise her right arm over shoulder level. (Id.)  On an undated form, Dr. Giganti opined that Plaintiff could not use her right hand for grasping or fine manipulation. (R. at 938.)

21.    The ALJ gave Dr. Giganti's opinion about Plaintiff's right hand "little weight," because she found that Dr. Giganti's right-hand restrictions were contradicted by Plaintiff's ability to work as a self-check cashier at Home Depot. (R. at 32.) Yet the ALJ did not properly assess Dr. Giganti's opinion regarding Plaintiff's right hand. Dr. Giganti was clearly a treating physician, so her opinion merited controlling weight, unless it was not consistent with the record.

22.    As an initial matter, it is not clear that Plaintiff's ability to work part-time as a self-check cashier demonstrates the ability to perform fine manipulation and grasping with her right hand, especially for an eight-hour workday. (R. at 32.) Regardless, after

finding Dr. Giganti's opinion inconsistent with the record, and deciding not to give it controlling weight, the ALJ was required to explicitly consider the regulatory factors, or at least to allow this Court to infer that she considered them. See Estrella, 925 F.3d at 95–96. Dr. Giganti examined Plaintiff many times, and her treatment notes show that she was familiar with Plaintiff's right-hand function. This Court cannot determine whether the ALJ considered these factors in determining the weight she gave to Dr. Giganti's opinion. Her decision is therefore not supported by substantial evidence, and remand is warranted.

23.    Additionally, Plaintiff argues that the ALJ erred in finding that there are significant jobs in the national economy that Plaintiff can perform, and in not including standing and left-hand limitations in her RFC determination.   Because remand is warranted for other reasons, this Court will not address these arguments here.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:      January 31, 2020
            Buffalo, New York


                              s/William M. Skretny
                              WILLIAM M. SKRETNY
                              United States District Judge

9